**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
MEMPHIS DIVISION**

| | |
|---|---|
| ASSANE NDOYE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. |
| ) | |
| FEDERAL EXPRESS ) | |
| CORPORATION, aka ) | |
| FEDEX CORPORATION, aka ) | |
| FEDEX EXPRESS ) | |
| ) | **JURY DEMANDED** |
| Defendant. ) | |

**COMPLAINT**

1. This discrimination and retaliation action is brought by Plaintiff Assane Ndoye ("Mr. Ndoye" or "Plaintiff") for violations of Title VII of the Civil Rights Act of 1964 (Title VII), the Tennessee Public Protection Act (TPPA), the Tennessee Human Rights Act (THRA), and Tennessee common law.

**PARTIES**

2. Mr. Assane Ndoye is a fifty-eight-year-old immigrant from Senegal. He is Black and his native language is Wolof. He is also fluent in French. His ethnicity is Wolof/Senegalese.

3. Federal Express Corporation (FedEx) is a publicly traded corporation employing more than 15 employees.

4. FedEx is organized in Delaware and has its principal place of business in Memphis, TN. It can be served through its registered agent, CT Corporation System, at 300 Montvue Road, Knoxville, TN 37919-5546.

1

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C §§ 1331 and 1367.

6. This Court has personal jurisdiction over FedEx because its principal place of business is in Tennessee.

7. Venue is proper in the Western District of Tennessee because the violations of law occurred in this judicial district, at FedEx's 3131 Democrat Road Memphis, TN 38118, location.

8. Mr. Ndoye has fulfilled all conditions precedent for all causes of action and received a Notice of Suit Rights related to his federal claims (see attached Exh. 1 – Right to Sue Letter).

9. This action is timely filed.

## FACTS

10. Mr. Ndoye grew up in Senegal and lived there until he was 27 years old.

11. Mr. Ndoye immigrated to Shippagan, New Brunswick, Canada, at the age of 27 to attend college.

12. Mr. Ndoye later moved to Montreal, Quebec, Canada and received his bachelor's degree in Business Administration/Operations Management from HEC Montreal.

13. Mr. Ndoye applied for and won the green card lottery in 1995, which allowed him to immigrate to the United States in 1996.

14. In 1997, Mr. Ndoye started working at FedEx as a part-time Materials Handler.

15. Mr. Ndoye was promoted through the ranks at FedEx over his career, eventually becoming a Senior Business Analyst in 2011.

16. Mr. Ndoye also received an MBA in General Management from Christian Brothers University and holds several certifications from multiple educational institutions.

17. Before his unwarranted firing on November 26, 2019, Mr. Ndoye had been a FedEx employee for 22 years.

18. At the time of his firing, Mr. Ndoye's salary was approximately $87,000 per year and included benefits.

19. Throughout the first 20 years of his career at FedEx, Mr. Ndoye was a highly qualified, high-performing employee who earned positive performance reviews and continually received accolades and positive feedback.

20. Further, Mr. Ndoye had worked under a variety of managers and never experienced issues working with any of these managers throughout the first 20 years of his career.

21. Because of his lengthy career with FedEx, Mr. Ndoye was intimately familiar with FedEx processes and policies and did his best to adhere to these and to make sure others were adhering to them as well.

22. In 2016, Mr. Ndoye's primary job responsibilities were changed from analytics to contract management. This change did not affect his job title.

23. However, Mr. Ndoye continued to work on analytics tasks and saved FedEx money while working in this role.

24. Further, FedEx employees are requested to work on projects outside of their traditional job responsibilities. As part of this program, Mr. Ndoye began working on a project called "Parent/Child" on or about July 2018.

25. Ms. Ruth Dabney became Mr. Ndoye's manager on or about January 2018. Ms. Dabney is a white woman from the United States.

26. After Ms. Dabney became his manager, Mr. Ndoye began to experience issues with his supervisor for the first time in his 20-year career at FedEx.

27. On or about June 2018, Mr. Ndoye requested that his primary job responsibilities be reassigned from contract management back to analytics. However, Ms. Dabney refused his request.

28. FedEx has internal procedures for employees to report complaints of discrimination, harassment, and retaliation, called Internal Equal Employment Opportunity (IEEO).

29. Mr. Ndoye filed an IEEO complaint on or about June 2018 in relation to Ms. Dabney's decision, believing that it was motivated by discrimination because he had all the qualifications to do the business analytics work outlined in his job description and had excelled in this role.

30. On or about September 2018, Mr. Ndoye was notified that the investigation into the IEEO complaint had been completed but was never notified of the outcome.

31. On April 24, 2019, Mr. Ndoye conducted a routine in-person supplier meeting with two representatives from Harter Aerospace LLC (Harter).

32. There were approximately 12 people total at this meeting.

33. Both representatives from Harter as well as all other attendees of the meeting, with the exception of Mr. Ndoye and one other co-worker, Mr. Saad Kidwai, were white.

34. Mr. Ndoye had a reputation, developed through his 20-plus-year career at FedEx, of diligently following-up with suppliers regarding their obligations and doing his job with passion and care.

35. Mr. Ndoye acted in line with this reputation during the Harter meeting by asking tough but fair questions about Harter's parent company and who Harter's main customers were.

36. Specifically, Mr. Ndoye expressed his concern that Harter bid on the same contracts as its parent company because the dual biddings could be a source of collusion.

37. Mr. Ndoye did not slap or pound the table during this meeting.

38. Mr. Ndoye's disposition during the meeting was typical of how he had conducted himself in supplier meetings throughout his career. The only difference was that Ms. Dabney was now his supervisor.

39. At all times, Mr. Ndoye believed he was acting in accordance with FedEx policies and procedures and sought to defend FedEx's best interests.

40. Following the Harter meeting, a complaint was made regarding Mr. Ndoye's disposition during the meeting.

41. Mr. Ndoye was shocked when he discovered that a complaint about him had been made, since his demeanor in the meeting was typical of how he conducted himself throughout his career at FedEx.

42. On May 6, 2019, Ms. Dabney issued Mr. Ndoye an official disciplinary letter for "disruptive behavior." This disciplinary letter was eventually upheld through FedEx's Guaranteed Fair Treatment Procedures (GFTP).

43. During the GFTP process, Mr. Saad Kidwai, a co-worker of Indian descent, made a statement on Mr. Ndoye's behalf stating that Mr. Ndoye acted as he "normally" would during supplier meetings and that the issue seemed to be related to Mr. Ndoye's cultural characteristics or accent.

44. A few other attendees of the meeting also submitted statements during the GFTP process. These statements—all written by white attendees at the meeting—used words such as

"argumentative," "belligerent," "aggressive," and "unprofessional" to describe Mr. Ndoye's demeanor. These allegations were untrue.

45. In addition, some of these submitted statements accused Mr. Ndoye of slapping or pounding the table with his fists or hands, which was not true and was contradicted by Mr. Kidwai's statement.

46. Mr. Ndoye asked FedEx Management and HR for more specific information regarding what he had done wrong during the meeting, but this information was never given to him.

47. Mr. Ndoye filed a second IEEO complaint against Ms. Dabney on or about August of 2019, believing that the disciplinary letter was motivated by discrimination on the basis of race/color, ethnicity, national origin, or cultural characteristics.

48. Mr. Ndoye reported the discrimination he was experiencing through the IEEO process in part to serve public purposes, such as having a more diversified workplace free of discrimination, and not solely private purposes.

49. After receiving the disciplinary letter related to the Harter meeting, Mr. Ndoye became afraid that conducting any future in-person supplier meetings would lead to further unwarranted discipline based on his demeanor and characteristics, which are influenced by his ethnicity, national origin, and cultural background.

50. Mr. Ndoye continued to carry on his job responsibilities, including conducting virtual supplier meetings.

51. Mr. Ndoye did not want to conduct additional in-person supplier meetings while his 2019 IEEO complaint—which stemmed from the Harter meeting—was still under an internal investigation. Mr. Ndoye felt that his job security could be threatened if he conducted any

additional in-person supplier meetings at that time, as he still did not understand what he had done to warrant discipline in the Harter meeting.

52. Therefore, Mr. Ndoye refused to conduct further in-person supplier or vendor meetings. He was subsequently issued two disciplinary letters for "failing to work as directed" related to these refusals.

53. While the issues related to the Harter meeting were ongoing, Mr. Ndoye continued working on the Parent/Child project mentioned above, which he started working on in 2018.

54. During his work on this project, Mr. Ndoye noticed numerous company assets that should be classified as capital expenditures (CAPEX) were being misclassified as operating expenditures (OPEX) in FedEx's internal systems.

55. This led Mr. Ndoye to believe that CAPEX might be misclassified as OPEX on FedEx's accounting records as well.

56. This further lead Mr. Ndoye to have reasonable cause to believe that FedEx had violated or would violate the Sarbanes-Oxley Act of 2002 (SOX) by making inaccurate corporate disclosures.

57. Mr. Ndoye reported the misclassification issues in good faith to Ms. Dabney on September 5, 2019.

58. Further, Mr. Ndoye invited other FedEx employees to join his team in investigating the misclassification issues.

59. Mr. Ndoye reported the misclassified assets to Ms. Dabney and FedEx Managing Director Kofi Appah multiple times, with the last time being November 11, 2019.

60. Mr. Ndoye believed it was his duty to report the misclassification of assets to Ms. Dabney and Mr. Appah under SOX as well as under FedEx's internal policy for reporting financial fraud.

61. Upon information and belief, neither Ms. Dabney nor Mr. Appah were responsible for how these assets were classified on FedEx's accounting records.

62. A meeting was scheduled for November 21, 2019, to address the asset misclassification with members of the FedEx Quality Action Team.

63. However, Ms. Dabney suspended Mr. Ndoye on November 20, 2019—a day before the meeting was set to take place.

64. FedEx terminated Mr. Ndoye on November 26, 2019.

65. Mr. Ndoye filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) through the Tennessee Human Rights Commission (THRC) on December 12, 2019.

66. Mr. Ndoye subsequently received an EEOC Right to Sue letter, which was dated and mailed on August 18, 2020 (Exh. 1).

## CAUSES OF ACTION

Mr. Ndoye incorporates all paragraphs above as if set forth in each count below.

## Count 1: Discrimination in Violation of Title VII of the Civil Rights Act Of 1964, As Amended

67. As a Black, Senegalese immigrant, Mr. Ndoye is a member of one or more protected classes.

68. Mr. Ndoye was highly qualified for the position of Senior Business Analyst by virtue of his education and experience.

69. FedEx terminated Mr. Ndoye on November 26, 2019, which constitutes a materially adverse employment action.

70. Upon information and belief, Mr. Ndoye's race, national origin, or ethnicity was the cause of his firing.

71. Upon information and belief, the disciplinary letters FedEx issued to Mr. Ndoye were motivated by race, national origin, or ethnic discrimination and these disciplinary letters also constituted materially adverse employment actions.

72. Upon information and belief, FedEx treated comparable non-protected persons more favorably than Mr. Ndoye.

73. Further, the issuance of the disciplinary letters and Mr. Ndoye's firing all occurred under circumstances giving rise to an inference of discrimination.

**Count 2: Retaliation in Violation of Title VII of the Civil Rights Act of 1964, as Amended**

74. Mr. Ndoye engaged in activity protected by Title VII by filing internal complaints of racial, ethnic, or national origin discrimination.

75. FedEx knew Mr. Ndoye was engaging in this protected activity.

76. Soon after Mr. Ndoye engaged in this protected activity, FedEx fired Mr. Ndoye.

77. Upon information and belief, FedEx issued disciplinary letters to Mr. Ndoye as retaliation for the protected activity he engaged in.

78. Upon information and belief, FedEx fired Mr. Ndoye in retaliation for engaging in protected activity.

## Counts 3 and 4: Violations of the Tennessee Human Rights Act (Tenn. Code Ann. § 4-21-401, et seq)

79. Mr. Ndoye's suspension and termination, as described above, constitute discrimination in violation of the Tennessee Human Rights Act (THRA).

80. Mr. Ndoye's suspension and termination, as described above, constitute retaliation in violation of the Tennessee Human Rights Act (THRA).

## Count 5: Tennessee Common-Law Retaliatory Discharge[1]

81. In the alternative, even if it is determined that FedEx did not violate Title VII or the THRA, FedEx is still liable for common-law retaliatory discharge because it discharged Mr. Ndoye for attempting to exercise his rights.

82. An employment-at-will relationship existed between FedEx and Mr. Ndoye.

83. Mr. Ndoye was discharged on November 26, 2019.

84. Upon information and belief, the reason for Mr. Ndoye's discharge was that he complained of being subject to discrimination based on his race, national origin, or ethnicity.

85. Upon information and belief, a substantial factor in FedEx's decision to discharge Mr. Ndoye was his exercise of his right to be free from discrimination based on race, national origin, or ethnicity.

86. The cause of Mr. Ndoye's discharge violates the clear public policy evidenced by Title VII and the Tennessee Human Rights Act.

---

[1] *See Williams v. City of Burns*, 465 S.W.3d 96, 110 n.11 (Tenn. 2015); *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 862 (Tenn. 2002).

**Count 6: Violation of Tennessee Public Protection Act (Tenn. Code Ann. 50-1-304)**

87. Mr. Ndoye was an employee of FedEx as contemplated by the Tennessee Public Protection Act (TPPA).

88. Mr. Ndoye had reasonable cause to believe both that FedEx was violating SOX in relation to its misclassification of assets and violating state and federal law by discriminating against him on the basis of race, ethnicity, or national origin.

89. Mr. Ndoye refused to participate in or remain silent about illegal activities that implicated important public policy concerns codified in SOX.[2]

90. Further, Mr. Ndoye refused to remain silent about the discrimination he was experiencing in violation of Title VII and the THRA, as set forth above, and these complaints also implicated important public policy concerns.

91. Mr. Ndoye reported these illegal activities to someone other than the wrongdoers.[3]

92. Mr. Ndoye reported these illegal activities to serve public purposes, not solely private ones.

93. Mr. Ndoye was in danger of being terminated when he chose to report these illegal activities.

94. Mr. Ndoye was terminated on November 26, 2019.

---

[2] *See, e.g.*, 15 U.S.C § 7202(a) (The Commission shall promulgate such rules and regulations, as may be necessary or appropriate in the public interest or for the protection of investors, and in furtherance of this Act.); 15 U.S.C. § 7241 ("The Commission shall, by rule, require, for each company filing periodic reports under section 78m(a) or 78o(d) of this title, that the principal executive officer or officers and the principal financial officer or officers, or persons performing similar functions, certify in each annual or quarterly report filed or submitted under either such section of this title that . . . (2) based on the officer's knowledge, the report does not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which such statements were made, not misleading; (3) based on such officer's knowledge, the financial statements, and other financial information included in the report, fairly present in all material respects the financial condition and results of operations of the issuer as of, and for, the periods presented in the report.").

[3] *See Haynes v. Formac Stables, Inc.*, 463 S.W.3d 34, 41 (Tenn. 2015).

95. Upon information and belief, and in the alternative to his claims stated above, Mr. Ndoye's reporting of these illegal activities was the sole cause of his termination.

96. Mr. Ndoye is entitled to reasonable attorney fees and costs under Tenn. Code Ann. § 50-1-304(c)(2).

## **PRAYER FOR RELIEF**

Wherefore, Mr. Ndoye prays that this Court:

1. Declare the conduct engaged in by Defendant FedEx to be in violation of Mr. Ndoye's rights;

2. Award Mr. Ndoye compensatory damages, including, but not limited to lost pay, including back and front pay, and damages for emotional stress, mental anguish, humiliation, and any damages he is entitled to for physical pain and discomfort suffered due to FedEx's mistreatment of him;

3. Award Mr. Ndoye punitive damages;

4. Award Mr. Ndoye reasonable costs and attorney's fees; and

5. Grant such other relief be deemed just and proper by this court.

Further, Mr. Ndoye demands a jury trial on all claims so triable.

Respectfully submitted,

FREEMAN & FUSON

**/s/ Mark Freeman**
Mark T. Freeman, Esq. (#16098)
2126 21st Avenue South
Nashville, TN 37212
Phone (615) 298-7272
Fax (615) 298-7274
mark@freemanfuson.com
*Attorney for Plaintiff*